Counsel for Ms. Smothers. Good morning judges. My name is Seth Diamond. Just six months after having been booked into the Walker County Jail, Mitchell Wayne Smothers died from septic shock due to the lack of necessary and adequate medical care he had received. He was just 48 years old at the time. It's the appellant's position that Walker County is liable for two reasons. The first reason, Walker County undertook a duty to provide inmates with necessary and adequate medical care when it contracted with Preemptive Forensic Health Solutions, its third-party medical provider. Under this court's prior holdings of Encada v. Prison Health Services, a county is liable for the deprivations caused by the policies of its contract medical provider. In this instance, the court would look to document 70.9 page 3. Under the contract for services, it was the provider's policy that nurses would determine whether inmates were allowed to be seen by a doctor. That's 70.9 page 4. The owner of Preemptive Forensic Health Solutions was Roger Childers. He was a nurse. He was also the director of the company, and he was the final policymaker. He knew Mitchell Smothers needed to be seen by a doctor, but he did not allow him to see one. And instead, Nurse Childers decided to attend to Mitchell Smothers' complicated medical history himself, which proved to be fatal. The second reason we contend that Walker County is liable is under this court's holding Gorkowski v. Clayton County, where this court said a county is liable for the policies, customs, and practices that are the moving force behind a constitutional injury. In this case, under the contract, Walker County retained the exclusive control over Preemptive Forensic Health Solutions. In the county's sole discretion under the contract, they were the only party that could enforce or cancel the contract. They had subjective knowledge, the county had subjective knowledge, that PFHS was depriving inmates to be seen by a doctor. And because of this, inmates were dying. Yet the county chose a deliberately indifferent policy when asked by the sheriff. They did nothing. And that was the moving force behind Mr. Smothers' constitutional injury. So the district court here seemed to say, following along the line of a number of other district courts in Alabama, that something along the lines of that counties are just never liable under Alabama law. Well, what do you say about that? So two things. One, the court's decision in Cotta, the statute that that looked at in Florida is essentially no different than the statute in Alabama, which requires a county to pay for medical services. Because in both statutes, that's what in Florida and Alabama said. The county's obligated to pay for services. But the court found that implicit with the obligation to pay is to provide. Number one. Number two, the contract that for services that the county entered into, they clearly voluntarily undertook a duty to provide inmates with medical services. And I think the district court disregarded those reasons and said, the county's obligation is merely to write a check. And that was it. But the duty is more than that. Yeah. And so, I mean, so you think, and just don't let me put words in your mouth, but I mean, you're saying that in Cotta establishes a rule that if you're providing medical services, you have to provide good medical services. Right. And here in counties in Alabama, generally, they write the check for medical services. So they're providing medical services. So it follows that they have to provide adequate medical services. That's correct. In the deposition from the county, from Robbie Dickerson, she said for the county to fulfill its duties under the contract, that they relied on the sheriff to tell them if they were having problems with the medical provider. And they would take care of it. But even though the sheriff told them, we're having problems, inmates are dying because they're refusing to allow inmates to be seen by a doctor, the county chose to do nothing. And they adopted the deliberately indifferent, do-nothing policy. I guess you said at the beginning that there are two bases. One was the, that the county undertook a duty. Was the other one the Encanta argument? Or was the, was the second base a different one? Yes. I'm sorry. The first one was when, in Cotta, that you have the non-delegable duty to be responsible for the medical providers, constitutional injuries caused by their policies. And then the second ones were Krakowski versus Clayton County, that if the county has a policy that's the moving force behind a constitutional injury, as it was in this case, then the county is also liable. And we're saying that the policy that the county adopted was that they had subjective knowledge that their medical provider was not attending to the and they chose to do nothing. What if, what if the county hadn't been told by the sheriff that there was a problem? I think that, I think the county would have a better case. But clearly in this case, the sheriff did. He, the sheriff was aware that there, before he took office, in the four years before he took office, there were nine inmate deaths from inadequate medical care. And on the 10th death, before Mitchell's mother's died, he went to the chairman of the county commission. And he told him that Nurse Childers and Preemptive Forensics Health Solutions is depriving inmates from seeing a doctor. And he asked the county to solicit bids for a new provider. And Jerry Bishop, the county chair of the county commission, told him, it's an election year. We're not going to do anything about it. So I think the facts of the case would be much different. Yeah, you, I mean, I think that's the right answer to Judge Grant's question. But I guess, just to rephrase your question a little bit. Sure. Like, is the duty that you're asking us to impose on the county one that sort of the county just always has to make sure it's providing adequate medical care? Or is the duty something more along the lines of like, the county, if the county if they know that there's stuff going wrong in the jail, then they have to do something about it. You get my point. Like, what is, what is the duty? Is it the broader duty that, which it may be. That's what you're saying. Like, look, if they decide to provide medical care, they have to provide adequate medical care. I understand your question. And, you know, interestingly enough, we argued both in our brief. We asked the court to find that there was a statute, statutory duty. And implicit with a statutory duty is to provide like an CADAA. And then we asked, even if we're wrong, they voluntarily undertook a duty. And actually, I think that's probably a stronger argument without the Alabama Supreme Court weighing in on that issue. Yeah. So the voluntary undertake the duty, that's a matter of taking Alabama law and like importing it into Section 1983, basically importing it into federal law. Right. So it's contract law, the state contract law. They contracted with this provider. And the agreement was that we're going to pay you and you're going to provide our inmates with, with health care services. And we're going to retain control over you. You are our agent. I know the district court said that the contract provider were employees of the Sheriff's Office. We take issue with that. They were really employees of the county because the county retained control. And I see my time is up. All right. Thank you, Mr. Diamond. Thank you. Mr. Tatum? No? I'm sorry. We're going to reserve the rest of our time for rebuttal. Thank you. Okay. Thank you. All right. Mr. Clements? May it please the court. My name is Fred Clements and I represent Walker County, Alabama. The district court should be affirmed because the record shows that Walker County fulfilled its duty to fund medical services at the jail. I would like to begin by addressing the argument that the county undertook a voluntary, voluntarily undertook the duty to oversee medical services through the contract. Now, if we're, if we're going to take a look at the contract, we have to take a look at the contract as a whole. And there's, in case law and nomenclature, commonly we use the county and the county commission as the same thing. In Alabama, they are effectively the same thing. The commission is the county. The county is the commission. And I bring this up to the point, is this is defined differently in the contract for services. In document 70-9, page 1, first sentence of the contract actually defines what county means in the contract. Know all men by these presents that the Walker County Commission, Sheriff James Underwood, and the Walker County Sheriff's Department here and after collectively, collectively referred to as the county. So, in this contract for services, they're referring to all... Did the sheriff under this contract have independent authority to make changes to medical care? Independently. It had, in the contract, it is joint. And it follows, and it would follow along with how it operates under Alabama statutory law. If, and so, and this is because the county controls the purse strings. The county controls the purse strings to a contract for services because the way that the statutes set it up is the county sets the budget, the county pays. And so, if you take a look at, and I believe it's the specific paragraph in the contract that they refer to, where paragraph 10 on page 8 of document 70-9 says, where it says, in the sole discretion of the county. Well, what they're talking about here is in the sole discretion because the county is capitalized. But, but let me ask you a question just to follow up on Judge Grant's question. Yes, Judge. And if you could just give a yes or a no. Would it be possible for the sheriff to decide, I don't want children's anymore because he is given completely inadequate medical care and nine people have died. So, I'm going to change it. I'm going to change the medical care to somebody else. Could, could the sheriff do that by himself? Is there a yes or no answer to that? That's, that's why I'm giving this. I mean, if there isn't, you can tell me. I don't want to be unfair, but it seems like there should be a yes or no answer. It seems like the answer is no. And I think you probably have to own that, but. Truthfully, Your Honor, you're probably correct, and I was looking for a no but type of answer. And you're correct, Judge Grant. It would be difficult because the sheriff by himself could not go out and get a new contract for medical services because he doesn't control the purse strings. So, at least to that extent, it would, the county would have to be involved. So, if that's so, then how can the county say, no, no, no, the sheriff is liable, not us? If the sheriff can't legally do what is required? Well, I think it's, I think it's important to note that there is no evidence in the record that the sheriff actually went to the county or went to the county commission. There is... It's a different question. You can argue those facts when that's relevant. But if the sheriff legally can't do anything about it, and say it's even another case, say there's a huge problem and the sheriff can't fix it because the county says, no, you can't fix it. It has to be on us. Why is the sheriff liable there and not the county? Judge, I think in that kind of scenario, I believe that you are right. If it's a situation where the sheriff goes to the county commission and presents, and I say the county commission because they are essentially a panel. They can't do anything in and of themselves. And so, in cases where sheriffs have gone and said, here is the problem. We need to make a change. And they said, nope, we're not going to do that. I think that is the, I think you hit the, you're exactly right, Judge, but that isn't what occurs here. Yeah, well, can I ask a broader question on that? So Alabama law, this is 14-620, says that county commissions can, if they want to, quote, elect a physician or as many physicians as in its discretion may be necessary to attend the inmates of the jails in such county. Okay? When the county does that and makes that decision and says, okay, we're going to decide who the physicians are, we're going to make that decision, how is an Alabama county any different than the Florida county that we addressed in Kanta? Are you asking in general or into this specifically as under these facts, Judge? Yeah, just, I mean, just, maybe I'm wrong. I think Walker County did that, right? Didn't it decide that it was going to use this service and it hired the service? And so under this statutory provision, it elected a physician to attend the inmates of the jails in the county? It was a joint decision with the sheriff. Okay, well. And, you know, because they were the ones that had to, you know, execute the contract for payment. Well, the county, I mean, the county was involved in deciding the physicians, right? I mean, it, well. Well, but, no, Judge, not really. So you think that, I mean, maybe this is new to me. So you think the county did not exercise its authority under 14620 and elect a physician or as many physicians as in its discretion may be necessary to attend the inmates in the jails in such a county? That's correct. It did not do that? That's correct. Okay, then what did it do? I'm sorry? Then what did it do? Why was it involved in the contract at all? Why did it have power over the contract? Because the county has to bid out the contract and under the way it's set up in Alabama. And the county holds, ultimately holds, the purse strings. Yeah, but, I mean, so the county selected who was going to, I mean, just maybe the county decided who was going to get the contract, right? Inevitably, the county had to have a part in that, yes, Judge. Yeah, so, I mean, so this is the provision that allows the county to do that. Is there another provision of Alabama law that allows the county to choose the physicians that are going to serve the inmates in the jail? I think the distinction is between the duties. The way I read, I read 14-6-19, and when I look at 14-6-20, I look at it in the light of 14-6-19, which uses the term shall. You have non-discretionary duty for the sheriff to provide services at the jail at the cost of the county. Don't those services have to be, have to include necessary medicine and medical attention, right? That's correct. So, let's say that the county offers some money and gives the money to Childers, and he just puts it in his pocket, and the county knows that. Has the county performed its duty at that point? Well, your point is under 19. I'm sorry. Your point is under 19, the county doesn't have a duty. The sheriff has the duty, right? That's your point. Right, but that's what I'm asking. Under 19, the county has the duty to pay. Right, and so I guess my question to you is 19 says if the sheriff takes an inmate to the emergency room to provide the medical care, the county has to pay that bill, right? That's correct. Yes, Judge, that's correct. 19 doesn't give the county power to do anything. It doesn't give it the power to choose anything. It doesn't give the county the power to execute a contract with anybody. It doesn't say the county can do anything. It just says if the sheriff decides that there's necessary medical care for prisoners, the county has to pay the bill. And which is what Walker County did in this case. But that's not true, because what you did was you were a contracting party. You chose physicians for the county jail, right? And the only thing I can find that gives you the authority to do that is the next one, which is 14-620. But if you continue to read 14-620, that is more along the lines of they're going to elect to hire a physician, because it also says that they can determine the term and whether or not they can hire and fire. So maybe the county didn't have any authority at all under Alabama law to enter into this contract. Not in the context of getting a third-party medical provider in. The county doesn't get to dictate who the physician is. Now, the sheriff would still determine whether those services were adequate under it, but neither the sheriff nor the county gets to choose who the physician is. Well, that's just the nature of the contract you entered, I guess is my point. Like, 14-619 says the sheriff can choose any physician he wants to to provide care to the inmates in his jail, and you have to pay for it, right? That's what 14-619 says. But you didn't do that. You instead entered a contract where you had control. By you, you're referring to the county? Yeah, not you specifically. Some control to the extent that they are required to pay for the services. Paying for the services doesn't give you any control at all. You just have to pay for it. That's what 14-619 says. You have to pay for whatever the sheriff requires. And you've made my point, Judge. Paying for the services doesn't give the county any control at all.  No, but your contract, the contract has you as a party, and you have control over it. You bid it. You decided who got it. And you were a party to determine whether it was going to be canceled or not, right? No, Judge. Under the contract, it is the county commission and the sheriff that jointly would make that decision, which follows along the statutory bill. But you already said that the sheriff doesn't have control. You already said that the sheriff doesn't have control. Well, I'm sorry. It's control of the, control of? Control of what happens medically at the prison. The sheriff cannot, by your own telling, say this particular medical organization is not providing the services. That prisoners need. A sheriff? No, if I said that, I miscommunicated. Well, no. Under the terms of, the county is part of the contract, right? Just to be clear, you are a party to the contract. The county is a party to the contract.  So the sheriff may be a party to the contract, too, right? I don't care. Correct. The point is, what gives you, the county, the authority to enter in this contract? Because it's the only way that the sheriff would be able to pay. No, that's not true. The sheriff could enter into a contract, and then he could send you a bill. It has to be bid out. There's a process that requires bids. The sheriff could bid it out, and then he could send you a bill. The way it's set up. The county sets up the bids. I understand that that is the way the county does it, and it's probably because 14.620 says that the county commission in each county may elect a physician or as many physicians at his discretion may be necessary to attend the inmates of the jails in such counties, right? That's what gives you the power to have a contract with physicians to attend the jails in the county, right? Yes, Judge. But I think the problem here is that potentially what reading it that way is potentially would discourage the use of third-party medical providers. I don't care. Let's just assume I don't care. Okay. On that note, why is everyone dying in the Walker County Jail? Why were there so many deaths in the jail that the sheriff ran on that platform to be elected? Stop having people die in the jail. Then he becomes sheriff, and people continue to die in the Walker County Jail. Just six months ago, the federal government indicted the entire nursing staff in the jail over a death in the jail. What is going on with the Walker County Jail with everybody dying in the jail? I can't answer that. Okay. I wish I could. Does it have anything to do with the fact that the county isn't providing sufficient funding for medical in the jail? No. The funding that's been provided by the county has been reviewed by district courts before, and even in this case where the sheriff said, we're going to send everyone to the hospital, the county paid. That's my point. Well, that's all right. Let's not talk about it anymore. All right. Thank you very much, Mr. Clements. We appreciate it. We're going to hear next from Mr. Tatum. May it please the court. Judge Brasher, I'm almost afraid to talk because I think, and not just Judge Brasher, but all of you have covered the points that I wanted to talk about, and I can actually directly answer some of the questions you've asked, so I will attempt to do so. The first thing that I would like to do is to direct your attention to document 70-1 and it's page 145. If you look there, you will find a letter that is written by Mr. Billy Luster, the chairman of the county commission. And he specifically speaks to Alabama Code 14 6-20 and he expressly states that they are making the decisions to hire medical care providers based on 14 6-20 because it gives them the authority to do so. So, the first question that was asked, or one of the questions that was asked, if they're not making the appointment pursuant to 14 6-20, and my colleague said they weren't, then how, or what was the basis of the authority of their action? Historically, as this letter reflects, they were making the decision based on 14 6-20. Yeah, and my question to opposing counsel was, if they're making the appointment under their authority under 14 6-20, how is this different than the Florida County in Encanta? Is it different at all from the Florida County in Encanta? And there is no difference, if that is the case. And no one has made a distinction to show a difference under this set of facts. And I think that the analysis that has to be applied has to be based on the specific facts that are written or that are involved in the case. Now, Judge Grant, you asked the question, what if the sheriff had not told the county that the services are inadequate, people are not getting to see doctors and they're dying? What if the sheriff had not told the county that? My answer to that question would be, it wouldn't change anything. It wouldn't change a thing. As far as the outcome is concerned, it would just be one less problem with what the county is doing because the analysis to determine whether the county is liable is the same. It's whether there was a constitutional deprivation, as you all know, whether or not there was a policy in place that could be attributed either to being the county's policy or the county's contractor's policy and whether there's a causal connection. And even if the sheriff hadn't have told the county commission that all of these folks are dying, the county's policy of hiring this incompetent contractor and continuing to allow him and his nurses to provide medical services, it wouldn't change anything. It was pursuant to their contractor's policy decision as to how and when to afford medical care to inmates, and that being Dr. Childers. The next thing I want to note is that the district court actually makes findings of facts that I don't even see how you get to the conclusion that the county is not liable. But the district court seems to focus on the fact that we didn't definitively prove that the county's motivation for adopting Childers' policies and not taking action was to save money. I submit to you that this is how I would pose a question. Does it matter what Walker County's motive was if their policy or their contractor's policy led to the constitutional deprivation? I say no. Because that's what the standard is. And so we get tied into talking about a failure to fund, failure to fund, but really the analysis is different. And the court obviously realizes that the analysis is whether there was a non-constitutional policy or a custom or practice. Now, the defenders try to make a distinction and say in the last contract that was signed, county is defined as everybody inclusive of the sheriff. It really doesn't matter again because there was a joint agreement to the county and the sheriff joined together and agreed to provide medical care and medical treatment. And so they're both responsible in the fact that only the claim is against the county doesn't affect or limit the county's liability. This could have been a very simple proposition for the county. All they had to do was write a check when the sheriff sent the bill. Or they could have drafted the contract to say the county is not responsible for providing or making sure that you provide medical care. All the county is responsible for doing is writing your check at the end of the day. They chose not to do that. Instead, they did something totally different. They exercised their authority under 14620. They got involved, they hired a physician, they set out terms and conditions by which services were to be provided, and they reserved the sole discretion to cancel the contract to the exclusion of the sheriff. And that's what the record reflects based on the testimony. And by doing that, they have subjected themselves to liability in this case. And for those reasons, we would request that the court reverse the trial, the district court's decision, which by the way, doesn't mention 14620 at all. Thank you. Thank you, counsel. We'll be in recess until tomorrow.